UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONNIE MING,

     Plaintiff,                       CIVIL ACTION NO. 14-CV-14643

vs.                               DISTRICT JUDGE GERSHWIN A. DRAIN

                                   MAGISTRATE JUDGE MONA K. MAJZOUB

COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Connie Ming seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 15). Plaintiff filed a Response to Defendant's Motion. (Docket no. 17.) The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I.    Recommendation**

The undersigned recommends that Plaintiff's Motion for Summary Judgment [14] be GRANTED and that Defendant's Motion for Summary Judgment [15] be DENIED. This matter should be remanded for further consideration of Plaintiff's mental impairments in light of Dr. Tejero's opinions, as discussed herein.

1

## II. Procedural History

Plaintiff filed an application for Supplement Security Income with a protective filing date of April 13, 2012, in which she alleged that she had been disabled since August 8, 2009, due to a variety of physical and mental impairments. (*See* TR 17, 19.) The Social Security Administration denied benefits. (*See* TR 17.) Plaintiff then requested a *de novo* hearing, which was held on July 24, 2013, before Administrative Law Judge (ALJ) Ryan Glaze, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 17-32.) The Appeals Council declined to review the ALJ's decision, and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

## III. Plaintiff's Testimony, Medical Evidence, and Vocational Expert Testimony

Plaintiff (docket no. 14 at 7-11), Defendant (docket no. 15 at 4-12), and the ALJ (TR 22-31) each set out a detailed factual recitation with regard to Plaintiff's medical record, the vocational expert's testimony, and Plaintiff's hearing testimony. With the exception of the arguments discussed further herein, there are no material inconsistencies between these three recitations of the record. Therefore, the undersigned will incorporate these statements of fact by reference. Additionally, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

## IV. Administrative Law Judge's Determination

The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 13, 2012, her application date, and that she suffered from severe "degenerative disc disease of [the]

2

lumbar spine and bipolar disorder with psychotic features." (TR 19.) The ALJ also found that Plaintiff's glaucoma, benign essential hypertension, GERD, dyslipidemia, cephalgia, and marijuana abuse were nonsevere impairments. (TR 19.) The ALJ then found that her impairments did not meet or equal those listed in the Listing of Impairments. (TR 20-22.) The ALJ found, however, that Plaintiff's allegations regarding the extent of her symptoms were not wholly credible and that Plaintiff had the residual functional capacity to perform medium work "except the claimant is limited to simple tasks in a work environment free of fast paced production requirements with only occasional interaction with supervisor[s], co-workers and the public." (TR 22-31.) The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 31-32.) Therefore, the ALJ found that Plaintiff had not been disabled under the Social Security Act since April 12, 2013, the date Plaintiff's application was filed. (TR 32.)

**V.     Law and Analysis**

    **A.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try

cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be

deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded because (1) the ALJ improperly substituted his own medical determination in lieu of Plaintiff's treating physician's opinions, (2) the ALJ improperly

5

weighed Plaintiff's treating physician's opinions; and (3) the ALJ improperly relied on the opinions of a non-examining physician in determining Plaintiff's RFC.[1] (*See* docket no. 14.) These arguments are interrelated as they all relate to Dr. Tejero's opinions and the weight afforded to those opinions by the ALJ.

Throughout his decision, the ALJ referenced six Global Assessment of Functioning (GAF) scores assigned to Plaintiff by his treating physicians, in particular Dr. Tejero. In each instance, the ALJ acknowledged the GAF score and then discussed whether he found the score appropriate or inappropriate based on the record evidence at the time the score was opined. (*See* TR 24-27.) For example, when discussing Plaintiff's GAF score in early March of 2012, the ALJ noted that a score of 50 was "appropriate at the time the claimant's (sic) discharge from the hospital, due to her recent psychosis." (TR 24.) And in late March, he found that "the assignment of a GAF score of 45 was inconsistent with the evidence or record at this time." (TR 24.) In reaching his conclusions, the ALJ relied on the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition (DSM-IV), which sets forth the narrative of symptoms related to various GAF scores. (*See* TR 24-27.)

Plaintiff argues that the ALJ's individual determinations related to the appropriateness of Plaintiff's GAF scores was the equivalent of second-guessing the physician's diagnoses and "playing doctor" to make his own independent medical findings. (Docket no. 14 at 13.) As Plaintiff notes, "ALJ's must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 194 (6th

---

[1] Plaintiff's arguments center around the ALJ's determination of her mental RFC. Therefore, the undersigned will not address any of the ALJ's findings with regard to Plaintiff's physical RFC.

6

Cir. 2009) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). Moreover, Plaintiff contends, even if the ALJ did not err in evaluating the GAF scores, the SSA's Hearings, Appeals and Litigation Law (HALLEX) Manual provides guidance to an ALJ when reference to such a publication is necessary:

> [An ALJ] must not cite medical texts and medical publications as the authority for resolving an issue. If it is necessary to refer to a medical text or medical publication, the ALJ must submit the material to the claimant or the representative for review and comment, and make the material part of the record.

HALLEX I-2-8-25(D). Plaintiff argues that if the ALJ had followed this rule, her counsel would have directed the ALJ to DSM-V, which phased out GAF scores for a "more accurate" system. (Docket no. 14 at 14.)

Defendant argues that the ALJ could properly consider Plaintiff's GAF scores as part of his decision and that the ALJ did not err in referencing the DSM to explain the significance of the scores. (Docket no. 15 at 19-20 (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009)). But Defendant's argument misses Plaintiff's point. Plaintiff takes no issue with the ALJ referencing or considering her GAF scores; Plaintiff asserts that the ALJ erred when he found that the physicians' determinations were, in his view, incorrect. The undersigned agrees. When deciding what weight to afford to Plaintiff's GAF scores, the ALJ erred when he used the DSM to determine whether the GAF scores were accurate. And to the extent that the ALJ engaged in such a review, the HALLEX manual required him to inform Plaintiff's counsel and give Plaintiff an opportunity to provide additional information or argument related thereto.

Moreover, though, the ALJ's balancing of these GAF scores and the weight he affords to Dr. Tejero's opinions is unclear, if not internally inconsistent. Finding that some of the GAF scores were correct and some were incorrect, the ALJ noted that he gave "some weight" or "great

7

weight" to each individual score. He also noted in relation to an October 2012 appointment that he gave "great weight" to a GAF score of 55 because he "finds that the medical opinion of Dr. Tejero is generally consistent with the evidence of record[]" where the doctor "had a substantial amount of time treating the claimant and his assessment is consistent with the claimant's reported stable mood." (TR 25.) Later in his decision, however, the ALJ gave "little weight" to Dr. Tejero's opinions where "the medical opinions of Dr. Tejero are not supported with the evidence of record." (TR 26-27.) Then, instead of relying on the opinions from Plaintiff's treating physician, after acknowledging the "substantial amount of time" he had spent treating Plaintiff, the ALJ afforded "significant weight" to the opinion of Dr. Michael McCarthy, a non-examining state-agency psychologist. (TR 29.) Plaintiff adds that Dr. McCarthy's opinion is particularly problematic in this case because over a third (134 out of 362 pages) of Plaintiff's medical record was added to the medical evidence after Dr. McCarthy provided his opinion. (Docket no. 14 at 18.)

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). And the opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

Additionally, the Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20

8

C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4. Notably, though, "it is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. *See Christephore v. Commissioner of Social Sec.*, No. 11-13547, 2012 WL 2274328, *6 (E.D. Mich. June 18, 2012) (Roberts, J.)

Nevertheless, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir. 2008). There is no per se rule that requires an

9

articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

Defendant argues that the ALJ did not err in his consideration of Dr. Tejero's opinions because the ALJ is not required to accept or reject an opinion *in toto*, because Dr. Tejero's opinions were internally inconsistent, and because Dr. Tejero did not explain why Plaintiff would miss three days of work per month due to her mental condition. (Docket no. 15 at 21-22.) Defendant's latter two arguments are inapposite as the ALJ made no such findings, and it is the ALJ's determination that is in question, not Defendant's post-hoc rationalization. *See Christephore v. Commissioner of Social Sec.*, No. 11-13547, 2012 WL 2274328, *6 (E.D. Mich. June 18, 2012) (Roberts, J.) ("[I]t is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. Moreover, it is the ALJ's rationale that is under review, not defense counsel's."). And while Defendant is correct that the ALJ is not required to accept or reject a physician's opinion in its totality, the ALJ's

10

findings, here, are unclear. Instead of giving Dr. Tejero's opinions a clear weight and explaining his rationale for that weight, the ALJ analyzes Dr. Tejero's GAF diagnoses, relies on them in part, rejects others, acknowledges that Dr. Tejero has a substantial treatment relationship with Plaintiff, and then gives the his opinions little weight because they are not consistent with the record. Therefore, regardless of the weight given to Dr. McCarthy's opinions, this matter should be remanded for further consideration and discussion of Dr. Tejero's opinions.

## VI.     Conclusion

For the reasons discussed above, Plaintiff's Motion for Summary Judgment [14] should be GRANTED and Defendant's Motion for Summary Judgment [15] should be DENIED. This matter should be remanded for further consideration of Plaintiff's mental impairments in light of Dr. Tejero's opinions, as discussed herein.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern*

11

*District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: September 24, 2015         s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated: September 24, 2015         s/ Lisa C. Bartlett
                                  Case Manager